**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

PRESTON BYRON KNAPP,
MICHELLE NICHOLE KNAPP,

Debtors.

Case No. 25-41644
Chapter 7

---

# FINDINGS OF FACT

---

This case is before the Court on the U.S. Trustee's Motion to Dismiss Chapter 7 Case for Abuse under Section 707(b). Dkt. No. 49. The Debtors filed a Response, and the U.S. Trustee ("UST") filed a Reply. Dkt. Nos. 55, 69. On November 7, 2025, the Court entered an order setting an evidentiary hearing. Dkt. No. 97. The Court also held several non-evidentiary hearings on this motion in the interim. On January 21, 2026, the parties submitted a Stipulation of Facts. Dkt. No. 106. The Court held evidentiary hearings on the motion on January 28 and February 6, 2026. Audio at Dkt. Nos. 127–130, 132–133.

On January 28, Colin Kreuziger appeared for the UST, and Preston Byron Knapp and Michelle Nichole Knapp appeared pro se. Patti J. Sullivan, Sarah L. Mattson, Brandon Scheetz, Bethany Siebenaller, and Ms. Knapp testified for the UST. Dkt. No. 127. The following exhibits were admitted into evidence: UST's Exhibits 1–38; 40–44; 47; 51; 53; 55–59; 61; 65; 66; 68–72. On February 6, Mr. Kreuziger appeared for the UST, and Mr. Knapp appeared pro se. Mr. Knapp testified for the UST. Mr. Knapp also testified for the Debtors. The following exhibits were received into evidence: UST's Exhibits 39; 48–50; 52; 54; 60; 62–64; Debtors' Exhibit A, pgs. 4–

7. The Debtors and the UST also submitted proposed findings of fact and conclusions of law on March 5 and 6, 2026. Dkt. Nos. 136, 137. The matter was then taken advisement.

On June 25, 2026, the Court entered an Order Setting Oral Rendering of its decision on the UST's motion. Dkt. No. 139. On June 26, 2026, Mr. Knapp filed a "Notice Regarding Payments to Debtor 1," alleging that Mr. Knapp's relationship with Harbor Freight ended that same day. Dkt. No. 140. However, this document is not part of the evidentiary record for the UST's motion and, therefore, cannot be considered.

On June 30, 2026, the Court gave an oral rendering of its decision. Appearances were made by: Preston Knapp, pro se; Colin Kreuziger for the US Trustee; Patti Sullivan as the Chapter 7 Trustee; and Christopher Olson for Wings Financial Credit Union. As stated on the record, abuse exists under the means test, bad faith, and the totality of the circumstances. This case must be dismissed or converted because allowing the Debtors to proceed in Chapter 7 would be an abuse of the bankruptcy process. A summary of the Court's decision is included in the order that will follow.

## FINDINGS OF FACT

The following findings of fact are based upon all of the evidence, the credibility of witnesses, the files, records, and proceedings. To the extent not explicitly stated, all findings of fact are found by a preponderance of the evidence. To the extent the Court makes factual findings in the order and summary of decision, as well as in the June 30, 2026 oral rendering, such findings are incorporated herein.

1. Mary R. Jensen is the Acting UST for Region 12, which includes the Federal Judicial District of Minnesota. Stipulation of Facts, Dkt. No. 106 ¶ 1 [hereinafter Stip.].

2. On May 21, 2025, Mr. and Ms. Knapp (together, "the Debtors"), filed the voluntary Chapter 7 petition commencing this case. Dkt. No. 1.
3. Ms. Knapp is a stay-at-home parent. Dkt. No. 127 at 12:40–12:56.
4. Mr. Knapp works as a merchant for Harbor Freight Tools. Dkt. No. 129 at 1:05:15–21; Dkt. No. 132 at 1:23–1:35.
5. The Debtors claimed a household of five on their Schedule J. Dkt. Nos. 11, 23, 53, 54.
6. Ms. Knapp testified that she did not know that claiming a larger household size would be beneficial. Dkt. No. 127 at 21:58–22:21.
7. Ms. Knapp's testimony on this point was not credible.
8. Mr. Knapp testified that he did not know that claiming a larger household size would be beneficial. Dkt. No. 132 at 1:36–2:35.
9. Mr. Knapp's testimony on this point was not credible.
10. The Debtors are intelligent individuals who spend meaningful time researching and considering their filings.
11. At the time of their bankruptcy petition, the Debtors had two minor children (ages two and five), and Ms. Knapp was pregnant. Stip. ¶ 6; Ex. 18 at 26.
12. The Debtors' third child was born in December of 2025. Stip. ¶ 6.
13. The Debtors purchased their current homestead on March 19, 2021, for $1,399,250. Ex. 66 at 1; Dkt. No. 128 at 15:40–15:55; Dkt. No. 132 at 3:25–3:29.
14. The Debtors' home is a five-bedroom, five-bathroom, 6,182-square-foot home with a three-car garage, located on 1.11 acres on Saunders Lake. Ex. 66 at 1, 10–33.
15. The Debtors took out a second mortgage in July of 2021. Ex. 132 at 6:04–13.

16. The Debtors were a year behind on their $4,423.15 mortgage payment when they filed this bankruptcy case. Ex. 1 at 23–24; Dkt. No. 132 at 4:55–5:38.

17. Ms. Knapp believes the Debtors' homestead is reasonable and necessary for her family and their activities, including homeschooling. Dkt. No. 128 at 17:02–43.

18. Ms. Knapp also testified it would be possible to live elsewhere. Dkt. No. 128 at 17:02–43.

19. Ms. Knapp testified that the Debtors have considered selling their house to help with their financial affairs during bankruptcy but have not yet found another property that would be suitable for their family. Dkt. No. 128 at 22:51–23:27.

20. Mr. Knapp testified that the home is a financial burden. Dkt. No. 132 at 1:21:38–49.

21. Ms. Knapp testified that she homeschools the Debtors' three- and five-year-old children. Dkt. No. 128 at 2:47–3:06.

22. The children's homeschooling expenses include a homeschool program at a local park, music and private cello lessons, swimming lessons, and sailing lessons on Lake Minnetonka. Ex. 37 at 36–37.

23. The Debtors frequently golf, shop at Whole Foods and purchase clothes at stores like J. Crew, Tommy Bahama, and Lululemon. Ex. 37 at 18–22, 24–31.

24. Ms. Sibenaller testified that she is employed as a paralegal specialist for the US Department of Justice, where she analyzes financial documents in bankruptcy cases. Dkt. No. 130 at 1:12–2:02.

25. The Debtors submitted medical expenses to the UST's office but did not provide supporting documentation requested by the UST. Dkt. No. 130 at 1:29:45–52; Ex. 37 at 32–35.

26. The Debtors submitted children's education expenses that were associated with homeschooling costs. Dkt. No. 130 at 36:00–37:01.

27. On June 9, July 29, August 5, and October 27, 2025, the Debtors amended their Schedule I. Dkt. Nos. 23, 53, 54, 96.

28. On July 29, the Debtors decreased their combined monthly income from $13,574.44 to $12,385.48 and indicated that they expected a 3.01% increase in gross salary effective August 1, 2025. Dkt. No. 53.

29. On the same form, the Debtors stated that this would bring their monthly take home pay down to $11,166.76. Compare Dkt. No. 23, with Dkt. No. 53.

30. On August 5, the Debtors increased their combined monthly income to $12,324.70. Compare Dkt. No. 53, with Dkt. No. 54.

31. The October 27 amendment declares the Debtors are not employed. Dkt. No. 96.

32. Additionally, on line 4 of their October 27 Statement of Financial Affairs, they claimed to have no income for the years 2023 and 2024. Dkt. No. 96.

33. On June 5, June 9, and July 14, 2025, the Debtors amended their Schedule E/F. Dkt. Nos. 22, 23, 42.

34. The Debtors listed the following nonpriority unsecured claims on their original schedule: $107,000 in credit card debt, a court judgment in the amount of $182,351.18 resulting from 27-CV-24-5620, a federal court judgment in the amount of $36,250.63 resulting from 24-CV-00100-SRN-DTS, a court judgment in the amount of $27,816.83 resulting from 27-CV-24-13306 and federal case 24-CV-00100-SRN-DTS, potential liability in the amount of $135,625.00 based on a demand letter from an attorney related to real estate commission, and a personal loan in the amount of $94,000. Dkt. No. 11.

35. There appears to be no change between the original schedule and the first two amendments. Compare Dkt. No. 11, with Dkt. Nos. 22, 23.

36. As of the June 9 amendment, the Debtors scheduled $1,076,500.00 in noncontingent, liquidated secured debts Ex. 21 at 13.

37. As of the June 9 amendment, the Debtors scheduled unsecured debt totaling $583,043.64, $314,418.64 of which is noncontingent and liquidated. Ex. 21 at 12–18.

38. The July 14 amendment increased the Debtors' noncontingent, liquidated unsecured debts to $332,124.05 and increased the Debtor' total unsecured debts to $650,479.05. Dkt. No. 42 at 13–21.

39. On June 9, June 20, July 14, and September 22, 2025, the Debtors amended their Schedule C. Dkt. Nos. 23, 29, 42, 89.

40. There appears to be no difference between the original schedule and the first two amendments, but the July 14 amendment added a claimed exemption of $1,852.80 for a life insurance policy. Compare Dkt. Nos. 11, 23, 29, with Dkt. No. 42.

41. The September 22 amendment increased the homestead exemption from $170,000.00 to the statutory maximum, $510,000.00. Dkt. No. 89; see also Minn Stat. § 510.01.

42. On June 9 and July 14, 2025, the Debtors amended their Summary of Assets and Liabilities. Dkt. Nos. 12, 42.

43. The July 14 amendment decreased the amount of total liabilities from $1,758,043.64 to $1,700,479.05. Compare Dkt. Nos. 12, 23, with Dkt. No. 42.

44. On June 9, June 20, July 14, and September 9, 2025, the Debtors amended their Statement of Financial Affairs. Dkt. Nos. 23, 30, 41, 78.

45. In relevant part, the June 20 amendment added $50,000.00 in escrow money lost from the cancellation of a purchase agreement, or as the Debtors describe, a "botched offer" to purchase a home in 2023. Dkt. No. 30.

46. The July 14 amendment increased the amount of lost property due to water damage in the homestead from $4,800.00 to $16,307.77. Dkt. No. 41.

47. The September 9 amendment increased the amount of money lost from the cancellation of a purchase agreement from $50,000.00 to $50,500.00 and added another loss due to the failed real estate transaction: "two parcels of real estate, with a combined market value of $2,200,000.00." Dkt. No. 78.

48. The UST filed the pending motion to dismiss on July 21, 2025. Dkt. No. 49.

49. On June 9, July 29, and August 5, 2025, the Debtors amended their Schedule J. Dkt. Nos. 23, 53, 54.

50. On July 29, the Debtors: added $1,172.89 in monthly real estate taxes and $1,141.67 in monthly homeowner's insurance; decreased their electricity, heat, and natural gas expenses from $444.88 to $439.26 as well as their cell phone, internet, and cable expenses from $322.94 to $287.13; increased medical and dental expenses from $1,269.37 to 1,996.61; moved childcare and children's education expenses from line 11 to line 21 without changing the amount; and, overall, increased their monthly expenses from $12,222.15 to $15,222.42 (which changed their monthly net income from $1,352.39 to -$2,836.94). Compare Dkt. Nos. 11, 23, with Dkt. No. 53.

51. On August 5, the Debtors increased their monthly expenses from $15,222.42 to $15,229.25, which changed their monthly net income from -$2,836.94 to -$2,904.55. Compare Dkt. No. 53, with Dkt. No. 54.

52. The Debtors list $12,089.75 in healthcare expenses during the period from November 1, 2024, to April 30, 2025. Ex. 37 at 33–35.

53. The Debtors sought to deduct $3,256.83 in monthly healthcare expenses from their means test calculation, which would include healthcare expenses outside the period from November 1, 2024, to April 30, 2025. See Ex. 32 at 1, lines 7, 22; Ex. 37 at 33–35.

54. The Debtors sought to deduct $429.16 in monthly education expenses from their means test calculation. See Ex. 32 at 2.

55. On June 9, July 29, September 9 and 22, 2025, the Debtors amended their means test calculation. Dkt. Nos. 25, 53, 80, 89.

56. Each amendment decreased the Debtors' monthly disposable income in Part 3 where the presumption of abuse is determined, even though in all instances, the Debtors' asserted numbers yield no presumption of abuse. Compare Dkt. No. 17, with Dkt. Nos. 25, 53, 80, 89.

57. The Debtors filed their schedules, and amended schedules with the intent to ensure no presumption of abuse would arise under the means test.

58. The Debtors alleged they have a monthly disposable income of negative $2,743.12 for purposes of the means test. Ex. 32 at 2; Ex. 72 at 11.

59. The Debtors allege five special circumstances that they claim justify additional expenses and income adjustments for purposes of the means test: (1) childcare expenses related to homeschooling; (2) the impending birth of a child; (3) garnishments; (4) a failed real estate transaction; (5) and job loss and income instability. Ex. 28 at 5.

60. The UST filed a statement of presumed abuse on July 7, 2025. Dkt. No. 35.

61. Mr. Knapp testified that he paid an individual named Brandon J. Williams $139,000.00 in November of 2023 to act as an "attorney-in-fact" for state and federal lawsuits initiated by Mr. Knapp pro se. Dkt. No. 132 at 19:34–20:20; Ex. 51.

62. Mr. Knapp paid Mr. Williams, knowing that he was not an attorney, because he thought Mr. Williams had expertise in preparing for litigation and managing an estate. Dkt. No. 132 at 21:55–22:48.

63. On October 18, 2023, Mr. Knapp sued Wings Financial Credit Union, the holder of both mortgages attached to the Debtors' homestead, in the United States District Court for the District of Minnesota. Ex. 47; Ex. 18 at 14.

64. The District Court dismissed the case on February 9, 2024. Ex. 50; Ex. 60.

65. On January 12, 2024, the Debtors filed another complaint against Compass Minnesota, LLC and Daniel Philip Hollerman—the professionals they had hired to sell their current homestead. Ex. 51.

66. The District Court dismissed the complaint on June 4, 2024 and entered judgment against the Debtors the next day. Id. at 25; Ex. 52.

67. The District Court awarded sanctions against the Debtors totaling $64,337.46, and it amended its judgment on August 12, 2024, to reflect the sanctions award. Ex. 53 at 10; Ex. 54.

68. The District Court found that "Plaintiffs' claims are rooted in a conspiracy theory concerning the American system of government, which has been roundly rejected by every federal court to consider it and whose proponents continue to burden the dockets of both this Court and its sister courts. . . . Plaintiffs' complaint is baseless in its entirety, either in law or a nonfrivolous argument for modifying existing law or for establishing new law." Ex. 53 at 7–8.

69. Mr. Knapp appealed the District Court's decision to the United States Court of Appeals for the Eighth Circuit, which affirmed the District Court on March 18, 2025. Ex. 61; Ex. 62.

70. The Eighth Circuit denied Mr. Knapp's petition for rehearing en banc on April 21, 2025. Ex. 63.

71. On February 12, 2024, Mr. Knapp pursued a second lawsuit against Wings Credit Union. Ex. 59.

72. The District Court dismissed the complaint on November 7, 2024, and it enjoined Mr. Knapp "from filing any civil action in this District Court against Wings or any affiliated parties, without first obtaining leave of Court." Ex. 59 at 14; Ex. 60.

73. It is undisputed the debts owed by the Debtors are primarily consumer debts. Stip. ¶ 5.

74. The meeting of creditors was scheduled pursuant to 11 U.S.C. § 341(a) for June 27, 2025, rescheduled for July 3, 2025, and subsequently continued to August 15, 2025, October 15, 2025, November 10, 2025, and November 24, 2025. Stip. ¶ 3.

75. The Debtors appeared and testified at each meeting of creditors. Exs. 1–5.

76. To date, the meeting of creditors has not been concluded. Stip. ¶ 3.

77. The Chapter 7 Trustee conducted at least five meetings of creditors in this case. Despite the Debtors stating they had listed all their assets in their bankruptcy schedules, they had not. Dkt. No. 129 at 8:30–8:53.

78. The Debtors did not disclose on their schedules the lawsuit they filed against Hennepin County on May 21, 2025. Dkt. No. 129 at 23:45–28:19; Ex. 12.

79. The Debtors did not disclose on their schedules their Venmo or Cash App accounts. Dkt. No. 129 at 28:23–28:42.

80. The Debtors did not disclose on their schedules their counterclaim against August and Annie Bell. Dkt. No. 129 at 28:48–29:00.

81. When this bankruptcy case was filed in May 2025, the last tax return filed by the Debtors was for 2021. The Debtors did not list tax refunds on their schedules and the Debtors testified at the meeting of creditors that they were not entitled to any tax refunds. Dkt. No. 129 at 8:58–9:23.

82. The Chapter 7 Trustee testified that she requested the Debtors file outstanding tax returns for 2022 through 2024 and advised the Debtors that any refund would be property of the bankruptcy estate. Dkt. No. 129 at 9:25–52.

83. The Debtors did not file the requested state tax returns for 2022 through 2024. Dkt. No. 129 at 23:45–24:10.

84. Both Debtors have filed federal tax returns seeking refunds for federal income taxes withheld in 2022 and 2023 despite claiming no income in those years. Ex. 7 at 2–3; Ex. 8 at 2–3; Ex. 10 at 2–3; Ex. 11 at 2–3.

85. Both Debtors were paid W-2 wages in 2022 and 2023. Ex. 7 at 4; Ex. 8 at 4; Ex. 10 at 4; Ex. 11 at 4.

86. Even if the Debtors were to receive their requested refunds, the Trustee believes she would not be able to administer those refunds. Dkt. No. 129 at 24:16–24:54.

87. Ms. Knapp filed a 1040-NR for 2022 through 2024 on which she reported no income. See Ex. 9 (1040-NR for 2024); Ex. 10 (1040-NR for 2023); Ex. 11 (1040-NR for 2022).

88. Ms. Knapp testified that she believes a U.S. Nonresident Alien Income Tax Return (1040-NR) is the appropriate tax return form to file with the IRS because she is a "nonresident alien." Dkt. No. 129 at 27:05–28:05.

89. Ms. Knapp also denies being the Debtor in this case under a theory that she and her social security number are separate entities. Dkt. No. 127 at 27:32–50.

90. Despite not reporting any income on her 2022 through 2024 tax returns, the W-2s attached to Ms. Knapp's returns show $24,284.21 in wages earned for 2024, $151,566.40 in wages earned for 2023, and $98,263.21 in wages earned for 2022. See Ex. 9 at 4; Ex. 10 at 4; Ex. 11 at 4.

91. Mr. Knapp also filed a 1040-NR to report no income for 2022 through 2024. See Ex. 6 (1040-NR for 2024); Ex. 7 (1040-NR for 2023); Ex. 8 (1040-NR for 2022).

92. Despite not reporting any income in his 2022 through 2024 tax returns, Mr. Knapp's W-2s show $190,679.15 in wages earned for 2024, $183,812.44 in wages earned for 2023, and $149,900.45 in wages earned for 2022. See Ex. 6 at 4; Ex. 7 at 4; Ex. 8 at 4.

93. Ms. Mattson, a bankruptcy specialist at the IRS, who reviews bankruptcy schedules and other documents to determine the interests of the IRS, stated a 1040-NR is not the standard form used by U.S. Citizens. Dkt. No. 129 at 45:55–46:04.

94. Mr. Knapp's position is that, notwithstanding the fact that Mr. Knapp works for Harbor Freight from his home office in Minnesota, Mr. Knapp need not disclose wages derived from that work alleging that said wages are not income as defined by the IRS because they are not "income effectively connected with U.S. trade or business." Dkt. No. 132 at 29:15–31:05.

95. The Debtors failed to disclose assets and misrepresented their income in an attempt to avoid having nonexempt assets available to creditors.

96. Mr. Brandon Scheetz is employed as an HR Business Partner at Harbor Freight. Dkt. No. 129 at 1:04:40–48.

97. Mr. Scheetz is familiar with Mr. Knapp's work and compensation structure at Harbor Freight. Dkt. No. 129 at 1:04:54–05:01; id. at 1:05:08–15.

98. Mr. Scheetz testified that Mr. Knapp has worked as a merchant for Harbor Freight since 2021. Dkt. No. 129 at 1:05:01–08; id. at 01:05:15–22; id. at 1:05:43–07:08.

99. Mr. Scheetz testified that Mr. Knapp received a $25,400.00 bonus on August 1, 2025, which corresponded to fiscal year 2025 (August 1, 2024 to July 31, 2025). Dkt. No. 129 at 1:10:07–11:05.

100. Mr. Scheetz testified that the annual bonuses correspond to the entire prior fiscal year and not to any particular month or period of months within that year. Dkt. No. 129 at 1:16:24–17:14.

101. Mr. Scheetz testified that merchants, including Mr. Knapp, consistently receive bonuses equal to 15% of their salary. Dkt. No. 129 at 1:11:24 –12:15.

102. Mr. Scheetz testified that merchants who receive at least an "average" or "meeting expectations" score of 3 out of 5 on their annual performance review will receive the full 15% annual bonus. Dkt. No. 129 at 1:13:27–14:45.

103. Mr. Scheetz testified that Mr. Knapp received a score of 3.0 on his fiscal year 2025 performance review. Dkt. No. 129 at 1:16:04–20.

104. Mr. Scheetz testified that Mr. Knapp received annual bonuses in 2022 ($22,500.00), 2023 ($23,750.00), 2024 ($24,550.00), and 2025 ($25,400.00). Dkt. No. 129 at 1:19:10–21:58; Ex. 34 at 20–23.

105. Mr. Scheetz testified that Mr. Knapp was not eligible to receive an annual bonus for fiscal year 2021 because he had just begun working at Harbor Freight in June 2021. Dkt. No. 129 at 1:21:58–22:30.

106. The Debtors timed their petition to avoid having to include the August 2025 bonus that the Debtors knew Mr. Knapp would receive.

**BY THE COURT:**

Dated: *July 2, 2026*

s/ William J. Fisher

William J. Fisher
United States Bankruptcy Judge

**Exhibit A: Means Test Calculations**

| Description | Debtor's Number | Corrected Number Assuming a Household of Five | Corrected Number Assuming a Household of Four |
|---|---|---|---|
| Current Monthly Income (CMI) | 15,022.21 | 17,138.88 | 17,138.88 |
| Food, Clothing, etc. | 2,523.00 | 2,523.00 | 2,129.00 |
| Health Care allowance | 420.00 | 420.00 | 336.00 |
| Housing and utilities - Insurance and operating | 869.00 | 869.00 | 855.00 |
| Public Transportation | 244.00 | 244.00 | 244.00 |
| Taxes | 3,800.00 | 3,800.00 | 3,800.00 |
| Life Insurance | 39.76 | 39.76 | 39.76 |
| Additional health care expenses | 2,836.83 | 1,594.96 | 1,678.96 |
| Health, disability, and HSA | 42.66 | 42.66 | 42.66 |
| Additional home energy costs | 527.13 | 527.13 | 527.13 |
| Education expenses for children <18 | 429.16 | 0 | 0 |
| Secured debts | 4,910.69 | 4,910.69 | 4,910.69 |
| Monthly cure amount on secured debts | 1,123.10 | 1,123.10 | 1,123.10 |
| Admin expense under Ch. 13 | 0 | 160.70 | 160.70 |
| Total deductions | 17,765.33 | 16,255.00 | 15,847.00 |

| | | | |
|---|---|---|---|
| Monthly disposable income (CMI – Total deductions) | -2,743.12 | 883.88 | 1,291.88 |
| Monthly disposable income x 60 | -164,587.20 | 53,032.80 | 77,512.80 |
| Presumption of abuse if more than $17,150 | No presumption of abuse | Presumption of abuse | Presumption of abuse |